UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CRYSTAL JACKSON,

               Plaintiff,

          - against -

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-255 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Crystal Jackson brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision made by the Commissioner of the Social Security Administration ("SSA") to deny her claim for Disability Insurance Benefits ("DIB"). Before the Court are the parties' cross-motions for judgment on the pleadings. (Dkts. 8, 12.) Plaintiff seeks reversal of the Commissioner's decision and an immediate award of benefits, or alternatively, remand for further administrative proceedings. The Commissioner asks the Court to affirm the denial of Plaintiff's claim. For the following reasons, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's motion. This case is remanded for further proceedings consistent with this Order.

## BACKGROUND

### I. PROCEDURAL HISTORY

In September of 2014, Plaintiff filed an application with the SSA for DIB, in which she alleged she had been disabled as of March 18, 2014 due to injuries to her back, neck, and arms. (Administrative Transcript ("Tr."), Dkt. 6, at 157–58, 181–187.)[1] Her application was denied.

---

[1] All citations to page numbers refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

(Tr. at 85–92.) After requesting a hearing (Tr. at 93–94), Plaintiff appeared before Administrative Law Judge Ifeoma N. Iwuamadi (the "ALJ") on November 22, 2016 (Tr. at 47–73). In a decision dated January 19, 2017, the ALJ determined that Plaintiff was not disabled and was therefore not entitled to DIB. (Tr. at 30–43.) On December 12, 2017, the ALJ's decision became final when the Appeals Council of the SSA's Office of Disability Adjudication and Review denied Plaintiff's request for review of the ALJ's decision. (Tr. at 4–7.) Thereafter, Plaintiff commenced this action.

## II. THE ALJ DECISION

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 18, 2014 and that Plaintiff suffered from the following severe impairments: obesity, disorders of the spine, bilateral cervical radiculopathy, and left shoulder bursitis. (Tr. at 35.)

Having determined that Plaintiff satisfied her burden at the first two steps, the ALJ proceeded to the third step, at which the ALJ considers whether any of the claimant's impairments meet or equal one of the impairments listed in the Social Security Act's regulations (the "Listings"). 20 CFR § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. In this

2

case, the ALJ concluded that none of Plaintiff's impairments met or medically equaled the severity of any of the impairments in the Listings. (Tr. at 36.) Moving on to the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[2] to perform "light work" as defined in 20 C.F.R. § 404.1567(b).[3] (Tr. at 36.) In making this determination, the ALJ concluded that Plaintiff could engage in "occasional overhead reaching, occasional bilateral around reaching, and occasional bilateral handling and fingering," but could not engage in "crouching and crawling," could not perform work involving "exposure to moving mechanical parts," and could not operate a motor vehicle. (*Id.*)

Relying on her RFC finding from step four, the ALJ determined that Plaintiff was unable to perform any of her past relevant work as an auditor. (Tr. at 41.) The ALJ then proceeded to step five. At step five, the ALJ must determine whether the claimant—given her RFC, age, education, and work experience—has the capacity to perform other substantial gainful work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In this case, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff was capable of performing, namely: information clerk, which has an availability of 170,000 jobs; counter clerk,

---

[2] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in the work setting." 20 C.F.R. § 404.1545(a)(1).

[3] According to the applicable regulations,

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

which has an availability of 90,000 jobs; and gate guard, which has an availability of 80,000 jobs. (Tr. at 41–42.)

III. **STANDARD OF REVIEW**

Unsuccessful claimants for disability benefits under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (quotation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quotations and brackets omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (quotation omitted). However, the Court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g).

**DISCUSSION**

Plaintiff argues that the Commissioner's decision was not supported by substantial evidence and that the ALJ failed to apply the relevant legal standards. (Pl.'s Mot. for J. on the Pleadings, Dkt. 8, at 8.) Specifically, Plaintiff argues that the ALJ erred in disregarding the medical reports of Dr. Robert A. Adair and that the ALJ impermissibly substituted her own medical conclusions for those of a physician. (*Id.* at 11–12.)

4

The ALJ's reasoning with respect to the medical opinion of Dr. Adair consisted of the following:

> According to a report dated December 29, 2015 from Dr. Robert Adair, an internist, the claimant received treatment in 2014 and 2015 and was diagnosed with cervical derangement, cervical radiculopathy, and internal derangement of the shoulder. . . . However, the claimant had reached maximum medical improvement on December 29, 2015. The claimant was considered to have a permanent impairment with non-scheduled losses of the cervical spine. Dr. Adair indicated that the claimant could not perform her at-injury work activities without restrictions. . . . Dr. Adair opined that the claimant's exertional ability [was] consistent with less than sedentary work meaning that she was unable to meet the requirement of sedentary work. Dr. Adair indicated that the claimant could not perform her at-injury work activities with restrictions, but that the claimant had not had an injury/illness since the date of injury, which impacted her residual functional capacity. According to Dr. Adair, the claimant would not benefit from vocational rehabilitation. *No weight has been given to this opinion as it is not supported by clinical findings, including those found in Dr. Adair's treatment notes, such as 2+ deep tendon reflexes, mostly 5/5 motor testing, and generally negative cervical, thoracic, and lumbosacral tests were negative, except for positive cervical decompression in 2016. . . . The claimant's gait was normal. Additionally, the record reflects large gaps in treatment, particularly in 2015. Further, Dr. Adair is an internist, not a specialist.*

(Tr. at 39 (emphasis added).)

The Court concludes that remand is required to enable the ALJ to solicit the necessary information from Dr. Adair to address the perceived deficiencies in his medical reports. "With respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule[4] of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quotations, brackets, and citations omitted). As courts in this Circuit have held, "the ALJ must make every reasonable effort to help an applicant get medical reports from his medical sources" and "must

---

[4] Although "[t]he current version of the [Social Security Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim as the current regulations only "apply to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290, 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); 20 C.F.R. § 404.1520(c).

5

seek additional evidence or clarification when the report from the claimant's medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Calzada v. Asture*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quotations and brackets omitted). Once the ALJ concluded that Dr. Adair's medical reports contained deficiencies, she incurred an affirmative obligation to "seek clarification and additional information from [Dr. Adair] to fill any clear gaps before dismissing [his] opinion." *Id.* In other words, if the ALJ wanted to disregard Dr. Adair's medical opinion, she needed to first ask him to clarify the perceived deficiencies in his medical opinion.

While an ALJ is entitled to disregard the opinion of a claimant's treating physician—after giving the physician the opportunity to correct the deficiencies in his or her medical reports—the ALJ must make clear that this decision is based on conclusions made by a medical professional and not those made by the ALJ himself or herself. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute [her] own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion."); *Hillsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error."). Here, in addition to not filling in the gaps in Dr. Adair's medical records for Plaintiff, the ALJ failed to explicitly clarify that she relied on sound medical evidence in deciding to disregard Dr. Adair's opinion that Plaintiff could not be vocationally rehabilitated. Rather, in rejecting Dr. Adair's opinion as it related to Plaintiff's RFC, the ALJ appeared to rely on Plaintiff's own "statements concerning the intensity, persistence and limiting effects of [her]

6

symptoms[,]" which the ALJ found "[were] not entirely consistent with the medical evidence and other evidence in the record."[5] (Tr. at 40.) Citing the findings of other physicians, the Commissioner argues that "the ALJ relied on clinical findings directly contradicting Dr. Adair's December 2015 claim that Plaintiff lacked the ability to use her hands for either simple grasping or fine manipulation." (Mem. of Law in Supp. of Def.'s Cross-Mot. for J. on the Pleadings and in Opp. to Pl.'s Mot. for J. on the Pleadings, Dkt. 13, at 16–17.) But the ALJ did not explicitly clarify that her decision to disregard Dr. Adair's medical opinion rested on the findings of the other physicians who had examined Plaintiff. *See Hall v. Colvin*, 37 F. Supp. 3d 614, 626 (W.D.N.Y. 2014) (rejecting Commissioner's argument that ALJ relied on legitimate evidence because "[e]ven if accurate, this is a *post hoc* rationalization that is not apparent from the face of the ALJ's decision").

In sum, the Court finds that remand is necessary to enable the ALJ to obtain enough information to determine whether Dr. Adair's medical opinion is entitled to controlling weight. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("[W]here we are unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ, we will not hesitate to remand for further findings or a clearer explanation for the decision." (quotations omitted)). The record indicates that Plaintiff received treatment from Dr. Adair for injuries to her back, neck, and arms, and that Dr. Adair prescribed Plaintiff medication. (Tr. at 194). Although Dr. Adair's statement that Plaintiff was disabled was not "itself determinative," his opinion was entitled to "controlling weight" so long as

---

[5] In reaching this conclusion, the ALJ focused on the fact that Plaintiff "did not take [Tramadol] every day," "could move her fingers" and "bathe and dress herself," "did not undergo injections," "could lift under five pounds," and "took public transportation when necessary." (Tr. at 40.)

7

the ALJ had enough information to determine that it was "well supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with the other substantial evidence." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). *See also Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) ("Even when a claimant is represented by counsel, it is the well-established rule in our circuit that the social security ALJ, unlike the judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." (quotation and ellipsis omitted)). As discussed, if, after soliciting the necessary information from Dr. Adair on remand, the ALJ determines that the doctor's opinion is still entitled to no weight, he or she must adduce evidence from a medical professional to support that conclusion. *See Greek*, 802 F.3d at 375.

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: February 28, 2019
      Brooklyn, New York